FILED
2015 Apr-17 AM 10:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| BRYAN C McCUTCHEN, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 7:13-cv-01629-LSC |
| | ) | |
| VALLEY HOME, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OF OPINION

Before the Court is Defendants Valley Home, Inc. and Paul H. Johnson's motion for partial summary judgment. (Doc. 33.) The Court has also received Plaintiff's motion for ore tenus hearing. (Doc. 34.) For the reasons stated below, the motion for partial summary judgment is due to be granted in part and denied in part, and the motion for ore tenus hearing is due to be denied.

I.  Background[1]

On August 6, 2013, Defendant Paul Johnson ("Johnson") was driving a loaded

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

tractor-trailer rig weighing approximately 74,000 pounds as part of a multi-day haul on behalf of Defendant Valley Home, Inc. ("Valley Home") southbound on U.S. Highway 11 in Tuscaloosa County, Alabama. After discovering that he had mistakenly taken the wrong exit off of Interstate 20/59, Johnson pulled off the highway to prepare to make a left turn in order to turn around and travel north back to the interstate. Before making the turn, Johnson looked out of his window and saw that Plaintiff Brian McCutchen ("McCutchen") was approaching in a utility truck. Johnson judged that he had enough time to complete the turn before McCutchen arrived and proceeded to pull out in an attempt to make the left turn. McCutchen applied the brakes and moved from the left to the right lane in order to give Johnson more room, but collided with Johnson's trailer before it was able to complete the turn into the northbound lanes.

    At the time of the accident, Johnson was sixty-five years old. Johnson had previously retired from truck driving at age sixty-two, but had come out of retirement to work for Valley Home in order to earn extra money. The trip during which the accident occurred was the first time Johnson had driven a tractor-trailer since he came out of retirement, and Johnson retired from driving tractor-trailers again the morning after the collision because he believed he was too old to drive trucks. Valley Home required Johnson to take a drug test following the accident, which Johnson passed.

Before Johnson was hired by Valley Home, the company verified that he had a valid driver's license and pulled his three year MVR, which listed one violation, for failure to obey a rule or regulation. Valley Home also required Johnson to pass a road test, and submit to a pre-employment drug screening, which Johnson passed. After Johnson returned from retirement, the only training Valley Home provided him was performed by the owner of the company, Michael Boyd ("Boyd"), based on materials from the company he had owned prior to forming Valley Home in 2009. Boyd testified that he reviewed Johnson's logbook for the haul at issue, but did not notice that Johnson was stopping more frequently than was required, odd behavior for a truck driver who typically has an incentive to drive as much as he is allowed in order to complete trips faster and earn more money.

On August 30, 2013, McCutchen and his wife Doloros McCutchen filed their complaint against Johnson and Valley Home with this Court. (Doc. 1.) On December 22, 2014, Defendants filed their motion for partial summary judgment. (Doc. 33.) On January 9, 2015, the McCutchens filed their response and a separate motion for ore tenus hearing. (Doc. 34.) On February 6, 2015, Doloros McCutchen filed a pro tanto motion to dismiss her claim for loss of consortium, and to dismiss her as a party plaintiff (Doc. 39), which this Court granted (Doc. 41.), leaving McCutchen as the only remaining plaintiff.

II.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine where there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as

a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).

III.  Discussion

McCutchen's complaint originally consisted of five counts. Count 5, Doloros McCutchen's claim for loss of consortium, was dismissed upon her motion. Count 1 is a claim of negligence and wantonness against Johnson, with an allegation of respondeat superior liability against Valley Home. Count 2 is a claim of negligence and wantonness *per se* against Johnson, with respondeat superior liability against Valley Home. Count 3 is a claim for negligent and wanton hiring, training, retention, and supervision against Valley Home, and Count 4 is a claim for negligent and wanton entrustment against Valley Home. Defendants ask the Court to grant summary judgment only on Counts 3 and 4, and the claims of wantonness against Johnson in Counts 1 and 2 of the complaint. Therefore, McCutchen's claim of negligence and negligence *per se* in Counts 1 and 2 are unaffected by Defendants' motion. The Court will address each relevant count in turn.

A.  Wantonness and Wantonness *per se*

Under Alabama law, wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So.2d 5, 9 (Ala. 2007) (citing *Bozeman v. Cent. Bank of the South*, 646 So.2d

601 (Ala. 1994)) (emphasis in original). Wantonness is not simply a more severe version of negligence, but is an entirely different tort concept. *Id.* While negligence is characterized as "the inadvertent omission of duty," wanton misconduct is characterized by the state of mind of consciously taking an action with knowledge that "the doing or not doing of [the act] will likely result in injury. . . ." *Id.* (quoting *Tolbert v. Tolbert*, 9093 So.2d 103, 114-15 (Ala. 2004)). "Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness." *Cash v. Caldwell*, 603 So.2d 1001, 1003 (Ala. 1992).

In *Essary*, the Alabama Supreme Court addressed a claim for wantonness asserted against a driver who, at an intersection where he had a stop sign but the cross traffic did not, executed a "rolling stop" and attempted to "shoot the gap" and beat traffic in order to cross the street. *Id.* at 12-13. The court held that the conduct was at most "an error in judgment" and that such conduct was not wanton. *Id.* at 12. A major basis for the decision was the fact that there was no evidence that the defendant had the required awareness that injury was a likely result of his actions. *Id.* The Court based this on the presumption that the risk of injury was as likely to the defendant himself as a result of his actions as it was to anyone else, and that individuals are presumed not to take self-destructive actions. *Id.* The court determined that this presumption against self-destructive behavior held true "[a]bsent some evidence of

impaired judgment, such as from the consumption of alcohol," or when the action is "so inherently reckless that we might otherwise impute [to the defendant] a depravity consistent with disregard of instincts of safety and self-preservation." *Id.* Because there was no such evidence in the case, the evidence did not "allow for the reasonable inference that [the defendant's] conduct was wanton." *Id.* at 13.

Under other circumstances, however, the Alabama Supreme Court has determined that a driver improperly entering an intersection could be considered wanton conduct. In *Clark v. Black*, that court considered evidence which showed that the defendant either ignored a stop sign or otherwise entered an intersection at an improperly high speed, even though she was familiar with the intersection in question and was aware that there was a "hillcrest" which limited the visibility of oncoming traffic coming through the cross street. 630 So.2d at 1012, 1016 (Ala. 1993). The Court concluded that the defendant's knowledge of the "hillcrest" and the danger it posed due to diminished visibility of oncoming traffic, combined with ignoring the stop sign or otherwise entering the intersection at a high speed, was sufficient evidence of wanton conduct to reverse the trial court for entering a directed verdict for the defendant on that claim. *Id.*

As an initial matter, the *Essary* presumption against self-destructive behavior is not applicable to this case. Implicit in that assumption is the requirement that the

defendant's behavior create a "risk of injury to [himself]... as real as any risk of injury to the plaintiffs." *Ex parte Essary*, 992 So.2d at 12. The risk of injury to Johnson from another vehicle colliding with the trailer of his truck was certainly not as great as the risk of injury to the driver of that other vehicle. *See Griffin v. Modular Transp. Co.*, No. 2:12-CV-2378-WMA, 2014 WL 896627 at *4 (determining that "[a] collision between a car and the flatbed portion of a tractor trailer does not carry the same risk of injury to the trailer driver as it does to the car driver," and therefore that the *Essary* presumption was inapplicable). Johnson himself has acknowledged that the driver of an 18-wheeler is generally safer in a collision than the driver of the other vehicle. (Doc. 35-3 at 4.) While the *Essary* presumption against self-destructive behavior does not apply to this case, the Court's analysis of the wantonness claim does not end there.

Defendant's argument concerning the claim for wantonness is essentially that this case is identical to *Essary*, in that Johnson, like the defendant in that case, attempted to "beat the traffic," and that therefore this Court should also find that Johnson's conduct was not wanton. Defendants argue that the fact that the defendant in *Essary* drove a passenger vehicle, as opposed to an 18-wheeler tractor-trailer like Johnson, is "mere trivia and not a relevant distinction" because the Alabama Supreme Court did not mention the acceleration, weight, or size of the vehicles involved in that case. (Doc. 37 at 8-9.) However, read together, *Clark* and *Essary* make it clear that

differences in the situation—such as being aware that visibility at an intersection was low in *Clark* and having no such special circumstance in *Essary*—can make the difference between conduct being wanton or merely an error in judgment. In this case, the distinction is that Johnson was driving an 18-wheeler rather than an ordinary passenger vehicle, and that distinction is more than mere trivia. Johnson's loaded tractor-trailer rig was a large vehicle weighing approximately 74,000 pounds. Because of the truck's weight and size, Johnson's attempt to "beat the traffic" created a greater risk than the defendant's attempt in *Essary*. Johnson himself has acknowledged that an 18-wheeler was longer and had less maneuverability than a car, and that an 18-wheeler was more dangerous than a standard passenger car. (Doc. 35-3 at 5.) Johnson's knowledge of the greater size and danger of his truck makes this case more like *Black*, where the defendant's knowledge of the impaired visibility of oncoming traffic posed by the "hillcrest" made her decision to run the stop sign into the intersection potentially wanton. A reasonable jury could determine that Johnson's attempt to "beat the traffic" in his 18-wheeler involved a conscious disregard for the risk of injury he was creating, and therefore was wanton. Summary judgment is therefore due to be denied on McCutchen's claim for wantonness.

As to McCutchen's claim for wantonness *per se*, this claim is only specifically addressed by either party in a footnote to the Defendants' reply brief, wherein

Defendants assert that Alabama does not recognize a claim for wantonness *per se*. (Doc. 37 at 7 n. 6.) The Court can find no Alabama case providing the required elements of such a cause of action, or even simply affirming that wantonness *per se* is a valid cause of action in this state, although a few Alabama cases have briefly mentioned the concept. *See Martin v. Union Springs & N. Ry. Co.*, 50 So. 897, 898 (Ala. 1909) ("but none of the derelictions so charged amount to wantonness per se, nor does the cumulative averment of all of them amount to a charge of wantonness"); *Snider v. Ala. Great S. R. Co.*, 97 So. 209 (Ala. 1923) ("Counts 7 and 8 charge wantonness, but the facts set up as constituting same are not sufficient as the mere failure to observe the statutory requirements as to signals even at a populous place or crossing without more is not per se wantonness."); *E. Ala. Behavioral Med., P.C. v. Chancey*, 883 So.2d 162, 166 (Ala. 2003) (noting that Plaintiffs' brought a claim for wantonness *per se*, but not discussing the outcome of any of the specific claims; that decision focused solely on the potential vicarious or direct liability of the hospital for the acts of one of the hospital's psychologists). Despite the mention of "wantonness *per se*" in a few opinions, it does not appear that such a claim exists under Alabama law. *See Rigby v. FIA Card Servs., N.A.*, No. 11-00373-KD-M, 2013 WL 5317178 at *5 (S.D. Ala, Sept. 23, 2013) (dismissing claim for wantonness *per se* for the same reasons). Because it is not a valid claim under Alabama law, Defendants' motion for summary judgment is

due to be granted as to McCutchen's claim for wantonness *per se.* The wantonness claim, however, will be decided by the jury.

    B.    Negligent and Wanton Hiring, Training, Retention and Supervision, and Negligent and Wanton Entrustment

The Alabama Supreme Court has stated the elements of a negligent hiring, training, retention, or supervision claim in this way:

> In the master and servant relationship, the master is held responsible *for his servant's incompetency* when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon it being established by affirmative proof that *such incompetency* was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.

*Voyager Ins. Cos. v. Whitson*, 867 So.2d 1065, 1073 (Ala. 2003) (quoting *Lane v. Cent. Bank of Ala., N.A.*, 425 So.2d 1098, 1100 (Ala. 1983)) (emphasis in original). To prove a negligent or wanton entrustment claim, McCutchen must also show " as one of the elements of his claim, that the defendants either knew or should have known that [Johnson] was incompetent to drive." *Bruch v. Jim Walter Corp.*, 470 So.2d 1141, 1144 (Ala. 1985). Therefore, a necessary element for each of these claims is proof that Valley Home knew or should have known that Johnson was incompetent to drive.

Referring to incompetency in the specific context of a negligent entrustment claim, the Alabama Supreme Court has stated that a plaintiff must show:

> that the driver to whom the defendant entrusted the vehicle was "unable or unlikely to have operated the motor vehicle with reasonable safety due to one of several characteristics or conditions," including "general incompetence" or "habitual negligence." . . . . More specifically, proof may "be established by evidence of previous acts of negligent or reckless driving, . . . previous accidents, or previous acts of driving while intoxicated.

*Edwards v. Valentine*, 926 So.2d 315, 321-22 (Ala. 2005) (internal citations and emphasis omitted). *See also Halford v. Alamo Rent-A-Car, LLC,* 921 So.2d 409, 413-14 (Ala. 2005) (stating that Alabama precedent shows that "the incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle"). Therefore, to proceed on either of these claims McCutchen must have evidence which would allow a reasonable jury to determine that Valley Home knew or should have known that Johnson was incompetent to drive.

McCutchen has failed to provide such evidence. The evidence establishes that prior to hiring Johnson, Valley Home verified that he had a valid commercial driver's license; pulled his three year MVR, which showed only a single violation, which was for failure to obey a rule or regulation; required him to pass a road test; and required him to take a drug screening both before hiring him and after the accident, both of

which Johnson passed. The only evidence that McCutchen points to of Johnson's incompetency is that Johnson had temporarily retired from trucking before returning to work with Valley Home; that Johnson assessed himself as "too old" to drive a truck after the accident, and therefore retired from his job with Valley Home; and that Johnson took more frequent breaks than were required under federal regulations during his single haul for Valley Home.

The fact that Johnson had come out of a temporary retirement to work for Valley Home is not proof that he was incompetent to drive at the time of the accident; Johnson could have chosen to enter temporary retirement for any number of reasons, and it would be unreasonable to determine that anyone who had stopped driving a truck professionally was thereafter incompetent to drive a truck professionally again. While Johnson took more frequent breaks than was required under the federal regulations, Johnson testified that he took extra breaks because he "[h]ad plenty of time" to make his run, and testified that he was not fatiguing more easily on his run for Valley Home as opposed to previous runs he had made as a trucker. (Doc. 37 at 21-22.) Even discounting Johnson's testimony regarding why he took more breaks than was required, it would be unreasonable to determine that taking more breaks than was required by the federal regulations establishes that a driver was incompetent to drive or give Valley Home knowledge of any such incompetency. Finally, Johnson's belief

that he was "too old" to drive after the accident does not mean that Valley Home knew or should have known he was incompetent to drive *before* the accident, when all of the objective evidence that Valley Home obtained on Johnson showed that he was, in fact, competent to drive. McCutchen has not provided proper evidence to show that Johnson had demonstrated an inability to drive an 18-wheeler, as is required to prove his claims of negligent hiring, training, supervision, and retention and negligent entrustment, and Valley Home has put forth evidence that he had, in fact, demonstrated an ability to do so. Therefore, summary judgment is due to be granted as to both of these claims.

C.   Motion for ore tenus hearing

McCutchen has also filed a motion requesting an ore tenus hearing with Johnson before the Court. (Doc. 34.)  He argues that Johnson's "physical appearance, presentation, and bearings are a material fact to whether Valley Home should have known" he was incompetent to drive an 18-wheeler at the time of the accident. (Doc. 34 at 2.)

While a district court may consider oral testimony in connection with a motion for summary judgment, it is not favored "because the summary judgment hearing is not meant to be a preliminary trial. . . . Accordingly, oral testimony should be used [only] when there is reason to believe that it will be of significant assistance to the

court and is reasonably circumscribed in scope." *Young v. City of Augusta, Ga. Through Devaney*, 59 F.3d 1160, 1170 (11th Cir. 1995) (alterations in original). Seeing the physical appearance and presentation of Johnson in 2015 would not be of "significant assistance" to the Court in determining whether Valley Home should have been aware of Johnson's alleged incompetency to drive at the time it hired him in 2013. Therefore, the Court declines to allow evidence to be presented in this unusual form that the Eleventh Circuit has made clear is "not favored" at this stage of the proceedings. *Id.* McCutchen's motion for ore tenus hearing is therefore due to be denied.

IV.   Conclusion

For the foregoing reasons, Defendants' motion for partial summary judgment (Doc. 33) is due to be GRANTED in part and DENIED in part. Summary judgment is due to be denied as to the wantonness aspect of Count 1 of Plaintiff's claim; summary judgment is due to be granted as to the wantoness *per se* aspect of Count 2 of Plaintiff's claim, and summary judgment is due to be granted on both Count 3 and 4 of Plaintiff's claim in full. Plaintiff's motion for ore tenus hearing (Doc. 34) is due to be DENIED.

A separate order will be entered.

Done this 17th day of April 2015.

                                                                  _____
                                                                     L. SCOTT COOGLER
                                       UNITED STATES DISTRICT JUDGE
                                                                                    177825